IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| WINDSTREAM, Corporation,<br>WINDSTREAM NEBRASKA, Inc.,<br>WINDSTREAM SYSTEMS OF THE<br>MIDWEST, INC., and WINDSTREAM<br>BENEFITS COMMITTEE, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | 4:08CV3173 |
| v. | ) ) | |
| ROBERT BERGGREN, Individually and as a Representative of Persons Similarly Situated, LAURIE BAXTER, NEIL BRAUCH, LARRY CHUBB, VIRGINIA DANCZAK, KENNETH DARBY, ROY EDMONDS, DIANE GIEBELHAUS, KENNETH GRAHAM, BONNIE HATRA, HOWARD HIGHT, JUDY HIGHT, LONNIE HUSING, EDWARD JUNGCK, ERVIN MATHER, ROBERT SWAILS, MARY WADE, and DALE WEAVER, | ) ) ) ) ) ) ) ) ) ) ) ) ) | MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR ATTORNEYS' FEES |
| Defendants. | ) ) | |

Now before me is the "Individual and Class Defendants' Motion for Attorneys' Fees," filing 244. My findings of fact are set forth below primarily in the "Background" section of this memorandum,[1] and my conclusions of law are set forth below under the "Analysis" heading. See Fed. R. Civ. P. 23(h)(3) (stating that, when considering a fee award in a certified class action, the court "must find the facts and state its legal conclusions under Rule 52(a)").

---

[1] Additional findings of fact that are made necessary by the parties' arguments may be stated under the "Analysis" heading.

## I. BACKGROUND

On September 29, 2008, Plaintiffs Windstream Corporation, Windstream Nebraska, Inc., Windstream Systems of the Midwest, Inc., and Windstream Benefits Committee filed an amended complaint under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq. (Am. Compl., filing 93.) The plaintiffs sought a declaratory judgment stating, among other things, that the plaintiffs had the unilateral right to amend or terminate the Windstream Comprehensive Plan of Group Insurance (the Windstream Plan). (Id. ¶ 60.) The amended complaint names Communications Workers of America Union Local No. 7470 and Laurie Baxter, Robert Berggren, Neil Brauch, Larry Chubb, Virginia Danczak, Kenneth Darby, Roy Edmonds, Diane Giebelhaus, Kenneth Graham, Bonnie Hatra, Howard Hight, Judy Hight, Lonnie Husing, Edward Jungck, Ervin Mather, Robert Swails, Mary Wade, and Dale Weaver, "individually and as representatives of persons similarly situated," as defendants. (See Am. Compl., filing 93.)[2] The amended complaint also states,

> The Defendant Class in this case is comprised of all former bargaining and non-bargaining employees of Aliant presently receiving welfare benefits from the (Windstream) Plan. . . . Plaintiffs maintain the Defendant Class under subsections (b)(1), (b)(2) and (b)(3) of Federal Rule of Civil Procedure 23, and will seek to certify this class pursuant to Federal Rule of Civil Procedure 23.

(Id. ¶ 33.)

On November 26, 2008, the "individually named defendants" answered the amended complaint and filed a counterclaim against Windstream Corporation and Windstream Benefits Committee. (See filing 164.) In their counterclaim, the individual defendants requested that a preliminary injunction be issued to prevent the plaintiffs from putting their proposed Plan amendments into effect prior to the conclusion of the litigation. (Counterclaim, filing 164, ¶¶ 60-61.) The individual defendants alleged that the counterclaim was "appropriate for determination as a class action" under Federal Rule of Civil Procedure 23(b)(1) and (3), (id. ¶ 40), and proposed a definition of the "Counterclaimant Class" that differed from the definition of the

---

[2]The parties later agreed to dismiss Communications Workers of America Union Local No. 7470 from the action. (See filings 168-169.)

"Defendant Class" submitted by the plaintiffs, (compare Counterclaim, filing 164, ¶ 41 with Am. Compl., filing 93, ¶ 33).

On December 22, 2008, the parties filed a "Stipulation and Joint Motion to Certify Class," (see filing 194), and I granted this motion in a memorandum and order dated December 31, 2008, (see filing 196). My memorandum and order defined the defendant class as "all former bargaining and non-bargaining employees of Aliant Communications Co. (Aliant) presently receiving Windstream welfare benefits from the [Windstream Comprehensive Plan of Group Insurance] . . . as retirees or as active employees." (Filing 196 at 1-2.) Also, I appointed "David A. Domina and Terry A. White of DominaLaw Group . . . as class counsel." (Id. at 6.)

On December 30, 2008, I denied the defendants' motion for a preliminary injunction. (See filing 195.) The parties filed cross motions for summary judgment on July 1, 2009. (See filings 215 and 218.) In a memorandum and order dated August 26, 2009, I denied the defendants' motion for summary judgment and granted the plaintiffs' motion for summary judgment. (See filing 242.) A judgment was entered in favor of the plaintiffs on that same date. (See filing 243.)

## II. STANDARD OF REVIEW

ERISA section 502(g)(1) states, "In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Courts are to consider the following factors when exercising their discretion to allow an attorney's fee under section 502(g)(1):

> (1) the degree of culpability or bad faith of the opposing party; (2) the ability of the opposing party to pay attorney fees; (3) whether an award of attorney fees against the opposing party might have a future deterrent effect under similar circumstances; (4) whether the parties requesting attorney fees sought to benefit all participants and beneficiaries of a plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

Eisenrich v. Minneapolis Retail Meat Cutters and Food Handlers Pension Plan, 574 F.3d 644, 651 (8th Cir. 2009) (quoting Martin v. Arkansas Blue Cross & Blue Shield, 299 F.3d 966, 969 n.4 (8th Cir. 2002)). This list of factors is not exclusive, however, and "district courts should use the factors and other relevant considerations as general guidelines for determining when a fee is

appropriate." Martin, 299 F.3d at 972.

"There is no presumption in favor of awarding attorney fees to a prevailing ERISA party," West v. Local 710, International Brotherhood of Teamsters Pension Plan, 528 F.3d 1082, 1086-87 (8th Cir. 2008) (citing Martin, 299 F.3d at 972), and "it is an open issue in this circuit whether attorneys fees may be awarded under 29 U.S.C. § 1132(g)(1) to an ERISA plan claimant who does not prevail," Antolik v. Saks, Inc., 463 F.3d 796, 803 (8th Cir. 2006) (citing Geissal ex rel. Geissal v. Moore Medical Corp., 338 F.3d 926, 934-35 (8th Cir. 2003)).  The Eighth Circuit has indicated, however, that "some modest award" in favor of a losing party may be appropriate in a "rare case."  Antolik, 463 F.3d at 803.

### III.   ANALYSIS

Although the plaintiffs prevailed in this case, the individual defendants (hereinafter "the defendants") argue that the plaintiffs should be ordered to pay attorney fees in the amount of $296,189.31 to defense counsel.  (See Defs.' Br., filing 245, at 13.)[3]

In opposition to the defendants' motion, the plaintiffs argue first that "Eighth Circuit law does not support an award of attorneys' fees to a nonprevailing party."  (Pls.' Br., filing 247, at 2.)  In support of this argument, the plaintiffs rely primarily on Lawrence v. Westerhaus, 749 F.2d 494, 496 (8th Cir. 1984), wherein the Eighth Circuit stated that "a court may properly deny a claim for attorneys' fees [under ERISA] solely on the ground that the plaintiff obtained no relief under the statute."  See also Jackson v. Metropolitan Life Insurance Co., 303 F.3d 884, 890 (8th Cir. 2002) (citing Lawrence, 749 F.2d at 496).  As I noted above, however, the Eighth Circuit has stated more recently that the question whether attorneys' fees may be awarded to a losing party remains "open."  Antolik v. Saks, Inc., 463 F.3d 796, 803 (8th Cir. 2006).  See also Geissal ex rel. Geissal v. Moore Medical Corp., 338 F.3d 926, 934-35 (8th Cir. 2003).  I shall not deny the defendants' motion solely on the ground that the defendants did not prevail in this case.

---

[3]The defendants' brief states, "The statement for services submitted by counsel for the Defendants is in the total sum of $296,189.31."  The defendants' motion requests a fee of this same amount.  (See filing 244.)  However, the evidence submitted by the defendants in support of their motion states, "For our Group, I respectfully request that the Court award . . . $215,011.31."  (See Defs.' Index, filing 246, Ex. 1, Domina Aff. ¶ 14.)

4

Instead, I shall assume that it may be appropriate to award attorneys' fees to a losing party in a "rare" ERISA case, Antolik, 463 F.3d at 803, and I shall proceed to consider whether a fee award is appropriate in this particular case.

      I shall begin my analysis by considering the five factors specified by the Eighth Circuit in Eisenrich and Martin: "(1) the degree of culpability or bad faith of the opposing party; (2) the ability of the opposing party to pay attorney fees; (3) whether an award of attorney fees against the opposing party might have a future deterrent effect under similar circumstances; (4) whether the parties requesting attorney fees sought to benefit all participants and beneficiaries of a plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions." E.g., Martin, 299 F.3d at 969 n.4.

      The defendants concede that the first factor–i.e., the degree of culpability or bad faith of the plaintiffs–is inapplicable in this case. (See Defs.' Br., filing 245, at 7.) Also, they make no argument that an award of attorney fees against the plaintiffs "might have a future deterrent effect under similar circumstances." (See id.)[4] I find, therefore, that the first and third Martin factors do not weigh in favor of a fee award.

      The defendants submit that factor two weighs in favor of a fee award because the plaintiffs "have the ability to pay attorney fees." (Defs.' Br., filing 245, at 7 (citing "SEC filings").) In response, the plaintiffs submit that "the capacity to pay, by itself, does not justify an award," (Pls.'s Br., filing 247, at 6 (citing Cottrill v. Sparrow, Johnson & Ursillo, Inc., 100 F.3d

---

[4] In their reply brief, the defendants argue that "[f]ailing to compensate the Individual Defendants' counsel will deter others protected by ERISA from attempting to enforce their rights, which is directly contrary to a key purposes [sic] of ERISA: protecting 'employee rights and [securing] effective access to federal courts.'" (Defs.'s Reply Br., filing 248, at 2 (citation omitted).) Preliminarily, I note that factor three does not speak to the possible deterrent effects of a failure to award fees; rather, it states that courts should consider whether an award of fees might have a "deterrent effect." Because the Martin factors do not represent an exclusive list of relevant considerations, however, I shall not disregard the defendants' point merely because it does not fit neatly within factor three. Nevertheless, I am not persuaded that the defendants' argument weighs in favor of an award of fees in this case. Although I agree with the general proposition that participants in an ERISA plan should not be deterred from attempting to enforce their rights, it seems to me that declining to award fees to the losing parties in this case will not meaningfully deter plan participants with meritorious claims from filing actions to enforce their rights in future cases.

220, 227 (1st Cir. 1996)), and that a fee award "would be an imposition that would increase costs associated with [the] benefit plan," (id. (citation omitted)). Based on the evidence now before me, I find that the plaintiffs' ability to pay attorney fees weighs in favor of a fee award in this case–though I agree with the plaintiffs' observation that their ability to pay, standing alone, does not justify a fee award.

Next, the defendants argue that the fourth factor weighs in favor of a fee award because the defendants "were pursuing remedies on behalf of a class of individuals who were prior employees of a local employer." (Defs.' Br., filing 245, at 7.) Although the defendant class did not include "all participants and beneficiaries of the plan," e.g., Eisenrich, 574 F.3d at 651 (emphasis added), there is no dispute that the class was large, (see Mem. and Order on Mots. to Certify Class, filing 196, at 2 (noting that "members of the . . . [c]lass reside in 25 states across the country, including an estimated 826 in the State of Nebraska")). I agree with the defendants that the fourth factor weighs in favor of a fee award.

With respect to the fifth factor, the defendants argue,

> The court recognized the ambiguity in the LT&T Handbook which was the only document familiar to the Individual Defendants and the class of retirees. Recent District Court and subsequent Eighth Circuit precedent in Halbach v. Great-West Life & Annuity Ins. Co. . . . appeared to provide the Individual Defendants with a basis to make an argument in support of their claims based on the LT&T Handbook and promises by former LT&T personnel. The Windstream Plaintiffs ultimately prevailed but the recent developments in Eighth Circuit precedent, at both the district and circuit court levels, provided some question on the soundness of their position.

(Defs.' Br., filing 245, at 7-8.) In their reply brief, the defendants add, "The merits of the Individual Defendants' positions, although not deemed sufficient to prevail, identified ambiguities in the Employee Handbook that this Court found significant enough to allow for consideration of extrinsic testimonial evidence." (Defs.' Reply Br., filing 248, at 3.)

In fact, the defendants did not identify ambiguities in the plan documents that were significant enough to allow for the consideration of extrinsic evidence. As I explained in the Memorandum and Order on Cross Motions for Summary Judgment, the reservation of rights clause at issue in this case was ambiguous when considered in isolation, but not when the plan documents were considered as a whole. I stated, "Because the meaning of the reservation of

6

rights clause is not ambiguous when additional plan language is taken into account, extrinsic evidence concerning the settlor's intent to vest welfare benefits cannot be considered." (Mem. & Order on Cross Mots. for Summ. J., filing 242, at 16.) Although the defendants' position in this case was not entirely without merit, I find that the relative merits of the parties' positions weigh against an award of fees.

 Apart from the five <u>Martin</u> factors, the defendants argue that a fee award is appropriate in this case because the plaintiffs benefitted from defense counsel's services. More specifically, the defendants argue that the plaintiffs would not have been able to obtain the relief they sought if the defendant class had not been certified and if the defendants' lawyers had not been appointed as class counsel. They state, "[w]here a class of defendants is essential to the plaintiff's procurement of relief, class representatives are required, and class counsel is necessary, then there is a benefit to the prevailing party, and attorneys' fees are in order even where the class does not prevail." (Defs.' Br., filing 245, at 4-5.) They add that "defendant class actions are rare" and "difficult," and they summarize the significant work performed by defense counsel during the course of this case. (<u>See</u> <u>id.</u> at 5, 12-13, 14.)

 I agree with the defendants that defendant class actions are both rare and challenging. The parties' joint efforts to resolve the issue of class certification helped advance this case in an efficient, orderly manner, and I have no doubt that the defendants' counsel and the plaintiffs' counsel each performed valuable services on behalf of their clients. Moreover, I agree that the plaintiffs "benefitted," in a general sense, from the certification of a class of defendants; indeed, the plaintiffs themselves announced their intention to seek certification of a defendant class at the outset of this litigation. (<u>See</u> Compl., filing 1, ¶ 17.) This is not to say that defense counsel was working for the benefit of the plaintiffs. But it is true that the formation of the defendant class and the appointment of class counsel were results that the plaintiffs sought in order to facilitate their effort to obtain relief. (<u>See</u> Compl., filing 1, ¶ 17; Am. Compl., filing 93, ¶ 33; Stipulation & Joint Mot. to Certify Class, filing 194, ¶¶ 7, 22-26, 28, 30.)

 The fact that the retirees are defendants here (rather than plaintiffs) raises unique considerations. Windstream's decision to alter the Plan in order to reduce the retirees' benefits–and its subsequent decision to file this action to obtain a declaratory judgment

supporting that decision–made it necessary for the retirees to obtain representation and defend the lawsuit in order to protect their interest in the retirement benefits. As the defendants correctly note in their brief,

> ERISA . . . is remedial legislation which should be liberally construed to effectuate Congressional intent to protect employee participants in employee benefit plans. A district court considering a motion for attorney's fees under ERISA should therefore apply its discretion consistent with the purposes of ERISA, those purposes being <u>to protect employee rights and to secure effective access to federal courts</u>.

(Defs.' Br., filing 245, at 2-3 (quoting <u>Welsh v. Burlington Northern, Inc., Employee Benefits Plan</u>, 54 F.3d 1331, 1342 (8th Cir. 1995) (citations and internal quotation marks omitted)) (emphasis added).) I find that the purposes of ERISA, i.e., the protection of employee rights and the preservation of effective access to the federal courts, would be promoted by a fee award in this case.

In <u>Antolik v. Saks, Inc.</u>, 463 F.3d 796, 798 (8th Cir. 2006), fifteen former employees commenced a class action against the defendant in an effort to collect "additional severance benefits allegedly promised in [a] . . . letter Saks distributed when it adopted an employee welfare plan" in 2000. The district court certified the class and, following a bench trial, awarded the plaintiffs the promised severance benefits and $301,110 in attorneys' fees and costs. <u>Id.</u> The district court's ruling was based on a conclusion that the letter constituted a "faulty SPD" rather than a "hopelessly inadequate SPD." <u>Id.</u> at 800-01. The Eighth Circuit reversed, holding that the letter "was an informal description of the . . . Plan, drafted for business reasons (to improve employee morale), not to satisfy Saks's ERISA duty to furnish Plan participants with an SPD." <u>Id.</u> at 802. The court added,

> The district court seemed to place great emphasis on the fact that, if the letter was not deemed and SPD, then Saks breached this ERISA duty. This is undoubtedly true, and Saks warrants no praise in that regard. But it is not a relevant fact because "an ERISA disclosure violation does not entitled a participant or beneficiary to benefits to which he is not entitled under the plan."

<u>Id.</u> (citation omitted). The court also rejected the district court's conclusion that the meaning of "change of control," as the term was used in the letter, trumped "the plain meaning of that term as used in the . . . Plan itself." <u>Id.</u> The court explained,

8

> In our view, it was obviously unclear whether the letter meant change of control in the corporate law sense, where the focus is on control of the parent corporation and its securities, or in the employer-employee sense, where a change in supervisors at almost any level of the enterprise might be viewed as a "change of control" by the supervised employees. It appears that Saks purposely deceived its nervous workforce by using this ambiguous term knowing it was likely to be misconstrued by employees, while at the same time ignoring its ERISA duty to furnish an SPD advising that the . . . Plan was available for all participants to examine. But there was no actionable misrepresentation and, indeed, no reasonable detrimental reliance by . . . employees who continued to work without confirming exactly what severance benefits were available under the . . . Plan.

Id. (footnote omitted). The court also reversed the district court's award of attorneys' fees "because plaintiffs are no longer prevailing parties." Id. at 803. In so doing, however, the court noted that "it is an open issue in this circuit whether attorneys' fees may be awarded under 29 U.S.C. § 1132(g)(1) to an ERISA plan claimant who does not prevail." Id. The court stated,

> Certainly, the amount previously awarded, $301,110, would be excessive. But Saks's deceptive behavior and flagrant disregard of its ERISA disclosure duties may make this the rare case where some modest award is appropriate. That is an issue we leave in the first instance to the district court's discretion. Accordingly, . . . the case is remanded for entry of judgment on the merits in favor of Saks and for further consideration of the attorneys' fee issue.

Id.

There is no indication that the Windstream plaintiffs violated a duty imposed by ERISA, and the instant case does not involve the sort of deception described in Antolik. It is noteworthy, however, that the defendants were prepared to submit evidence that the company's officers told a number of the class representatives that, under the terms of the applicable plan, employees were entitled to lifetime benefits in retirement that could not be modified or terminated by the company. (See Mem & Order on Cross Mots. for Summ. J., filnig 242, at 6-7.) Indeed, I think it is fair to say that the defendants based their case primarily upon the theory that the plaintiffs' decision to reduce retirees' benefits violated oral promises that were made to the retirees in years past. As I indicated above, I did not consider the defendants' extrinsic evidence because the meaning of the Plan terms most directly at issue in this case was not ambiguous when the terms of the Plan were considered as a whole. (See id. at 10-16.) Thus, there has been no finding that the plaintiffs broke promises to the defendants when they acted to reduce the retirees' benefits.

9

Nevertheless, I am mindful of the defendants' arguments about those promises, and I find that those arguments weigh very slightly in favor of a finding that this is the sort of rare case in which a modest fee award might be made in the losing party's favor.

I find that the unique considerations presented by this case (i.e., the fact that this suit was brought by an employer against a class of defendant retirees who were then required to obtain counsel and attempt to protect their interests in retirement benefits), combined with the plaintiffs' ability to pay a fee award, the large size of the class of defendants, and ERISA's goals of protecting employee rights and securing employees' effective access to the federal courts, weigh in favor of a modest fee award in this case.

The amount of the fee award remains to be determined. The appropriate starting point for determining the amount of the award is to identify the lodestar amount, that is, the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. E.g., Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed," and "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly." Id. Hours that were not "reasonably expended" on the case should also be excluded from the initial fee calculation. Id. at 434.

The documents submitted in support of the defendants' motion do not allow me to calculate properly the lodestar amount. In particular, I note that the defendants' attorneys offered only an approximation of the number of hours that each of them–and other members of their staff–spent working on this case; that the defendants' attorneys do not clearly state the hourly rates that they and their paraprofessional staff are claiming or regularly claim in other cases; and that the defendants do not indicate which persons worked on various aspects of the case. (See Defs.' Index, filing 246, Ex. A, ¶¶ 7-9.) Also, as I noted above, the fee amount requested in the defendants' motion differs from the amount requested in the motion's supporting affidavit. (See supra note 3.)

Due to the deficiencies in the materials submitted by the defendants, and in light of the fact that the defendants did not prevail in this litigation, I find that a fee in the amount of $21,000

should be awarded to the defendants' counsel.[5]

**IT IS ORDERED** that the "Individual Class Defendants' Motion for Attorneys' Fees," filing 244, is granted in part, and a judgment shall be entered stating that the plaintiffs are to pay the defendants a fee award in the amount of $21,000.

Dated January 4, 2010.

BY THE COURT

s/ Warren K. Urbom
United States Senior District Judge

---

[5] This amount equals approximately ten percent of the sum requested in the affidavit submitted by the defendants in support of their motion for attorneys' fees (i.e., $215,011.31).